03475-P0600

TMP/ej

E-FILED

Monday, 30 October, 2006  03:38:09 PM

Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| FLOYD K. HAYES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 04-CV-1062 |
| | ) | |
| DONALD N. SNYDER, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY TO PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

NOW COMES the Defendant, WILLIAM M. HAMBY, M.D., by his attorneys, HEYL, ROYSTER, VOELKER & ALLEN, and for his Reply to Plaintiff's Response to Motion for Summary Judgment, states:

## I. **REPLY TO ADDITIONAL MATERIAL FACTS**

1.     Plaintiff is a sixty-year old Vietnam veteran and a former Kentucky State Trooper. Pl. Ex. I at 1978; *see* Hamby Stat. at 4 ¶ 25 and Ex. 4 at 9 (Dr. Amin's deposition testimony that the documents bearing Bates Nos. 1950-2015 (Pl. Ex. I) are medical records of the Danville Veterans' Administration Hospital kept in the ordinary course of the Hospital's business).

**RESPONSE: Immaterial.  Whether or not the Plaintiff is a veteran or a former Kentucky State Trooper has no bearing on the issues presented at summary judgment.**

2.     In 1997, during a drunken blackout, plaintiff struck and sexually assaulted his wife. He subsequently received a sentence of 10 years in the Illinois Department of Corrections ("DOC"). *Id*.

**RESPONSE: It is conceded to be material and undisputed.**

3.     In April 1998, after being incarcerated in Schuyler County Jail and then briefly at the DOC facility in Pinckneyville, plaintiff was transferred to Hill Correctional Center in Knox County, Illinois.  DOC Defendants' Answer to Complaint at 2 ¶ 10.

**RESPONSE: It is conceded to be material and undisputed.**

HEYL ROYSTER
VOELKER
& ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-P0600
TMP/ej

    4.     At some point prior to September 2001, plaintiff began suffering from daily pain as a result of spasming of the cremasteric muscle that controls his left testicle.  Hayes Dep. at 10-11.

**RESPONSE: Immaterial and disputed.  It is immaterial as any complaints of pain prior to September 2001 were not made to Dr. Hamby.  In addition, the medical records attached to Defendant's Motion for Summary Judgment as a part of Group Exhibit 3 make no reference to spasms of the cremasteric muscle.**

    5.     During the spasms, plaintiff's left testicle "pulls and draws and goes up inside of [him] . . . caus[ing him] a tremendous amount of pain."  Hayes Dep. at 11; see also Hayes Dep. at 33.

**RESPONSE: Immaterial.  Mr. Hayes is not a physician and cannot diagnose a complaint as a spasm or any other sort of medical condition.  Moreover, there is no evidence that complaints of "a tremendous amount of pain" were presented to Dr. Hamby.  (See Exhibit 2, Dr. Hamby's deposition, p. 118; as well as Exhibit 3, p. 62.)**

    6.     On September 23, 2001, plaintiff, who previously had been diagnosed with non-cancerous cysts in his testicles, visited the Medical Unit and reported to the nurse that he was experiencing pain in his left testicle, that his testicle was swollen and that he had to "pull down [the] testicle to urinate."  Pl. Ex. V at 14.

**RESPONSE: Immaterial.  These complaints were made to someone other than Dr. Hamby.  Moreover, the noted complaints make reference to the Plaintiff reporting having to pull down his testicle to urinate.  Testicles have no involvement in urination and this complaint makes no sense medically.  (See Hamby's Deposition, Exhibit 2, pp. 73-74.)**

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-P0600
TMP/ej

7.      The following day, an unidentified doctor at the Medical Unit examined plaintiff and prescribed an antibiotic for a possible infection as well as Tylenol 3 (i.e., Tylenol with codeine, a narcotic) for the pain.  Pl. Ex. V at 14 (very bottom of page); Hayes Dep. at 26.

**RESPONSE: Immaterial.  Care and treatment provided by an unidentified physician for a problem unrelated to this case is not material to the issues involving the care and treatment provided by Dr. Hamby in October of 2001.**

**Material and undisputed as to the issue of whether or not staff physicians prescribe narcotics without Dr. Hamby's approval.**

8.      Besides Dr. Hamby (who, as set forth below, never prescribes pain killer stronger than Tylenol), the other doctors at the Medical Unit during this time period only prescribed narcotics where absolutely necessary to alleviate pain.  Hamby Dep. at 57.

**RESPONSE: Immaterial.  Care and treatment provided by other physicians for conditions not presented to Dr. Hamby are not relevant to the issues presented in this case. Moreover, differences in opinion between physicians do not constitute a basis for deliberate indifference.**

9.      The doctor prescribed both medications for 10 days, and advised plaintiff that he should return in 10 days for a re-evaluation and a possible referral if the pain persisted.  Pl. Ex. V at 14.

**RESPONSE: Immaterial. Care and treatment provided by other physicians for conditions not presented to Dr. Hamby are not relevant to the issues presented in this case. Differences in opinion between physicians do not constitute a basis for deliberate indifference.**

HEYLROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

3

05415-P0600
TMP/ej

**Material and undisputed as to the issue of whether staff physicians may prescribe medications without Dr. Hamby's consent.**

10.      On October 4, 2001, plaintiff returned to the Medical Unit because he remained in pain.  Pl. Ex. V at 15.

**RESPONSE: Material, but disputed.  Plaintiff's Exhibit V at page 15 contains Dr. Hamby's notes for his October 4, 2001 examination of Mr. Hayes.  The subjective portion of that visit states, "Now with frequency and urgency epididymitis is okay."  There is no reference to Mr. Hayes making complaints of persistent pain as suggested.**

11.      This time, plaintiff saw Dr. Hamby, and reported to him the severe pain he was suffering from the swelling and cramping of his left testicle.  *Id.*; Pl. Ex. IV (Hayes Decl.) At 1-2 ¶¶ 6-7; *see also* Hamby Stat. at 2 ¶¶ 4-6; Hayes Dep. at 15-16.

**RESPONSE: Material, but disputed.  Exhibit V at page 15 does not make reference to Plaintiff reporting severe pain and swelling associated with cramping of his left testicle for the note referencing October 4, 2001.**

12.      Dr. Hamby prescribed another antibiotic, but only regular Tylenol for the pain.  Pl. Ex. V at 15; *see also* Hamby Stat. at 2 ¶¶ 4-6.

**RESPONSE: Material and undisputed.**

13.      Dr. Hamby never prescribed narcotics (or anything stronger than Tylenol) to inmates because, in his judgment, Tylenol was all they ever really needed.  Hamby. Dep. at 51-53.

**RESPONSE: Immaterial and disputed.  Dr. Hamby's care and treatment of anyone other than Mr. Hayes is not relevant to this cause of action.  Moreover, Paragraph 13 does not accurately set forth the statements made in Dr. Hamby's deposition at pages 51 through 53.**

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

4

05415-P0600
TMP/ej

14.     On October 15, 2001, plaintiff was seen by Dr. Hamby again, and complained again about the severe pain in his left testicle.  Pl. Ex. IV (Hayes Decl.) At 1-2 ¶¶ 6-7; Pl. Ex. V at 15; Hayes Dep. at 15-16.

**RESPONSE: Material and disputed.  Plaintiff's Exhibit V at 15 does not indicate that Mr. Hayes complained again of severe pain in his testicle.  First, Mr. Hayes did not complain of severe pain on October 4, 2001 with respect to his testicle.  Second, Exhibit V page 15 on October 15, 2001 suggests that the Plaintiff still had discomfort in his left testicle, but no complaint of severe pain.  In fact, under the objective portion, Dr. Hamby notes on examination the left testicle was tender but no identified abnormality.**

15.     Dr. Hamby documented this pain in his notes as "discomfort", terminated the Tylenol prescription and prescribed an athletic supporter for the pain.  Pl. Ex. V at 15; *see also* Hamby Stat. ¶¶ 8-12; Hayes Dep. at 40-41 (Dr. Hamby told plaintiff that a jock strap was all he needed).

**RESPONSE: Material and disputed.  Defendant disputes Paragraph 15 to the extent that Plaintiff is suggesting that Dr. Hamby documented a complaint of pain as discomfort.  Dr. Hamby documented Plaintiff's complaint of discomfort as discomfort.  In addition, there is no evidence of a discontinuation of a Tylenol prescription noted at that entry.  It does not appear from Exhibit V page 15 that any changes were made with respect to the Plaintiff's medication pursuant to that visit.**

16.     On October 29, 2001, plaintiff was seen by another doctor within the Medical Unit, Doctor Richard Shute.  Pl. Ex. V at 16.  Plaintiff again reported the swelling and pain in his scrotum. *Id*.  Dr. Shute's plan was to refer plaintiff for a urology work-up.  *Id*.; *see also* Hamby Dep. at 77-80.

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-P0600
TMP/ej

**RESPONSE: Immaterial and disputed.  First, Exhibit V at page 16 does make reference to Plaintiff's visit with another physician.  This has no relevance to Plaintiff's claims against Dr. Hamby's care and treatment of Mr. Hayes.  In addition, there is no evidence to indicate the specific reasoning behind Dr. Shute's reference to a referral for urology work-up as he did not fill out any of the forms required to refer a patient out for specific care as is noted in Dr. Hamby's deposition, pp. 78, 79, and 80.  In addition, page 16 of Plaintiff's Exhibit V does not make reference to pain in the Plaintiff's scrotum.**

17.    Dr. Hamby's approval was required for such an outside referral.  Hamby Dep. at 29-31.

**RESPONSE: Immaterial.  Dr. Hamby did not believe that Plaintiff should have been referred to an outside physician with respect to the complaints made to him.  The Plaintiff is attempting to infer that Dr. Hamby denied a referral made by Dr. Shute.  Dr. Hamby testified at pages 79 and 80 of his deposition that no request for a referral to an outside physician was ever presented to him by Dr. Shute.  If Dr. Shute actually wanted Mr. Hayes to be seen by an outside physician, Dr. Shute needed to complete the appropriate paperwork and present it to Dr. Hamby for approval.  This was never done.  (Hamby deposition, pp. 78-80.)  Plaintiff has no admissible evidence to suggest otherwise.**

18.    Plaintiff did not receive the referral or the urology work-up, and Dr. Shute told plaintiff that Dr. Hamby had declined it.  *See* Hayes Dep. at 29, 31-32.

**RESPONSE: Immaterial and disputed.  It is not disputed that Plaintiff was not referred for urology work-up on October 29, 2001.  This Defendant has no way of knowing what Dr. Shute told the Plaintiff.  However, Dr. Hamby testified in his deposition that he did not decline**

HEYL ROYSTER
VOELKER
& ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-P0600
TMP/ej

the referral as no referral was presented to him.  There is no paperwork to support Plaintiff's claim that a referral was made.  See Hamby's Deposition, pp. 78-80.

In response to the footnote associated with Paragraph 18, Defendant disputes that the statements made by Dr. Shute are admissible against Dr. Hamby.  First, testimony from Mr. Hayes concerning statements made to him by Dr. Shute would constitute hearsay and therefore would not be admissible.  Plaintiff recognizes this as his footnote references the exceptions to the hearsay rule.  The exception cited to is that found in 801(d)(2)(D) which exempts statements offered against a party made by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship.

The cases cited to by the Plaintiff support the hearsay exception for agents concerning matters within the scope of their agency or employment.  However, in this case, there is no evidence that Dr. Shute was an agent or employee of Dr. Hamby.  In fact, the Plaintiff's footnote indicates that he is only presuming that Dr. Shute was employed by the medical unit and not by Dr. Hamby.  The Plaintiff suggests that Dr. Shute worked for and was under the authority of Dr. Hamby, the Medical Director, and references pages 26 and 27 of Dr. Hamby's deposition.  Nowhere in those two pages does Dr. Hamby state that Dr. Shute worked for him or was under his authority.  In fact, Dr. Hamby's testimony is that he believed there were three other part-time physicians working at Hill while he was there.  In fact, Dr. Hamby testified that he did not recall Dr. Shute except to know that he had signed some medical records, so he believed that he was there as well.  He did not actually recall ever interacting with him.  On pages 28, 29, and 30, Dr. Hamby testified that Dr. Shute could write prescriptions without his

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

7

05415-P0600
TMP/ej

approval and that a referral may or may not have required his approval. In any event, Dr.
Hamby testified that he does not recall any interactions with Dr. Shute regarding this patient
or any other patient for that matter. In order to overcome the hearsay objection, Plaintiff
would have to provide some evidence to indicate that Dr. Shute was an agent, employee, or
servant of Dr. Hamby. *See*, Federal Rules of Evidence 801(d)(2)(D). There is no such
evidence.

19.     On January 13, 2002, plaintiff again visited the Medical Unit and reported his testicular
pain. Pl. Ex. V at 17. He also expressed his concern that he was not being treated because was
"short" – i.e., he had a relatively short time before his release date. *Id.*; *see also* Hamby Dep. at 81.

RESPONSE: Material and disputed. Plaintiff's Exhibit V page 17 suggests that the
Plaintiff suggested that "they don't want to check it out any further because I'm short."
Plaintiff does not identify who "they" are.

The following day, Dr. Hamby performed a jacket review of plaintiff's medical file. Pl. Ex.
V at 18.

RESPONSE: Material and disputed as incomplete. It should be noted that following
Dr. Hamby's jacket review, his plan was to have the patient seen by the physician. The patient
was then seen by Dr. Shute on the M.D. call line on January 25, 2002.

20.     On January 25, 2002, plaintiff again saw Dr. Shute. Pl. Ex. V at 18.

RESPONSE: Material and undisputed.

Plaintiff now reported increased pain as well as an abnormal, curvature of his penis. *Id.*

RESPONSE: Immaterial and disputed. Plaintiff reported increased pain lately while
urinating as well as abnormal curvature of his penis. Nothing contained in this visit has any

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

8

05415-P0600
TMP/ej

bearing on care and treatment provided by Dr. Hamby except to confirm that no other physician had diagnosed Mr. Hayes as having cremasteric spasms.

21.     During this visit, Dr. Shute observed that the plaintiff's left testicle was pulled upward and much higher than the right one, and that physically examining it caused even greater pain. *Id*. Dr. Shute prescribed an antibiotic, ibuprofen, and ice packs. *Id*.

**RESPONSE: Material, but disputed. Defendant does not dispute that Plaintiff was seen by Dr. Shute on January 25, 2002; however, there is no reference in Dr. Shute's record that the physical examination of Plaintiff caused him greater pain. Defendant does not dispute that Dr. Shute prescribed the antibiotic, ibuprofen, and ice packs.**

22.     A prescription for ice packs was really a "pass" that allowed plaintiff to retrieve ice and take it with him to his cell. The ice packs were the "only thing that helped [plaintiff's] pain." Hayes Dep. at 33, 35. The ice packs provided plaintiff with some temporary relief from the pain, but they did so only for brief periods of time and left him in pain for the remainder of the day. Pl. Ex. IV (Hayes Decl.) At 2 ¶ 13.

**RESPONSE: Immaterial. Dr. Hamby had no involvement in either providing or discontinuing a pass for ice packs.**

23.     Dr. Shute explained to plaintiff that he could not prescribe him stronger pain medication because Dr. Hamby would not approve. Hayes Dep. at 26-27.

**RESPONSE: Immaterial. Conversations between the Plaintiff and another physician are irrelevant to the care and treatment provided by Dr. Hamby. Furthermore, there is no evidence that Dr. Shute actually recommended a prescription for anything more than Tylenol at the time indicated. Dr. Shute's thoughts and beliefs concerning Dr. Hamby's attitudes**

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-P0600
TMP/ej

toward the prescription of stronger medications is not relevant nor admissible. Dr. Hamby testified that prescriptions for medications would not require his approval. Additionally, Plaintiff previously made reference to an entry made on September 24, 2001, at which time a physician prescribed Tylenol with codeine. (See also Dr. Hamby's deposition wherein he testified that prescription orders would not have required his approval. See Hamby Deposition, p. 29.)

24.    Dr. Hamby testified that he refused to refer plaintiff to an outside medical provider – whether a urologist or a pain management specialist – because he could not personally document the cause for plaintiff's pain. Hamby Dep. at 104-108.

RESPONSE: Material but disputed. Dr. Hamby testified that he did not refer the Plaintiff to an outside medical provider because he could not document a cause of the Plaintiff's reports of pain. Specifically, on page 106, Dr. Hamby indicated that he found no medical reason to refer the patient to a specialist. Plaintiff's Paragraph 24 infers that Dr. Hamby refused to send the patient out for a referral to a urologist. In fact, Dr. Hamby did not ever find that the patient needed to be seen by a urologist when he saw the patient. In essence, just because the patient may have reported that he was in pain, a referral to an outside specialist would not be made unless there was some documentable medical condition causing the pain that could be treated better by someone of a particular specialty. No refusal occurred.

25.    Apparently even Dr. Shute's witnessing and reporting of the retracting left testicle did not constitute sufficient documentation for Dr. Hamby to refer plaintiff for outside care. Hamby Dep. at 108 (stating that he had "no idea" what he would have had to see in order to make a referral for plaintiff's testicular pain).

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-P0600
TMP/ej

**RESPONSE: Immaterial. Speculation and hypotheses as to what sort of presentation would merit a referral to a urologist is completely irrelevant and immaterial to this case. In addition, Dr. Hamby testified that a retracting testicle occurs without symptoms and is not usually associated with pain. (Hamby deposition, p. 66.)**

26.    Although testicular retraction is an uncommon condition, Dr. Hamby had seen the condition previously and was aware both that it could be caused by a muscle spasm, and that it could be painful. Hamby Dep. at 66-67.

**RESPONSE: Immaterial. Whether or not Dr. Hamby had observed testicle retraction in other patients is completely immaterial with respect to the allegations in this case. Dr. Hamby has not testified that the patient, Mr. Hayes, presented to him with testicle retraction due to muscle spasms. In fact, Dr. Hamby's deposition testimony suggests that retracting testicles occur without any symptoms. (Hamby Deposition, p. 66.) While a muscle cramp could be painful, muscular retraction of the testicles is usually not due to muscle cramping and is therefore not painful. (Hamby Deposition, p. 66.) Again. There is no evidence in this case that Dr. Hamby believed the patient's testicles were retracting due to a muscle spasm.**

27.    On or about February 6, 2002, Plaintiff saw Dr. Shute again, and reported again his left scrotal pain. Pl. Ex. V at 20.

**RESPONSE: Material and undisputed. However, Plaintiff fails to point out that Dr. Shute recommended treatment for Plaintiff's complaints of pain was ibuprofen.**

28.    On or about February 14, 2002, plaintiff met with Dr. Shute to review certain x-ray results regarding a bony mass in his arm, and also to request a different pain medicine for his scrotal pain. Pl. Ex. V at 22.

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

11

05415-P0600
TMP/ej

**RESPONSE: Immaterial.   Defendant admits that Plaintiff saw Dr. Shute on February 14, 2002 as indicated.   This is not relevant to Dr. Hamby's interactions with the Plaintiff.  However, Defendant will admit that said statement is material and undisputed with respect to the issue that Plaintiff was being seen for his complaints by a medical physician.**

29.     Dr. Shute continued the prescription of an ice pack and analgesic.  Pl. Ex. V at 22-23.

**RESPONSE: Immaterial, but undisputed.**

30.     On March 27, 2002, plaintiff requested a copy of his medical records.  Pl. Ex. V at 25.

**RESPONSE: Immaterial.  Whether Plaintiff requested a copy of his medical records or not has no bearing on this cause of action.**

31.     On April 16, 2002, plaintiff wrote to Assistant Director Montgomery and described his extreme pain and problems with his testicles – including his retracting and cramping testicle and his bending penis.  DOC Stat. at 7 ¶ 36 and Ex. C (the "Montgomery Letter") at 1-2.

**RESPONSE: Immaterial.  Whether Plaintiff communicated with Assistant Director Montgomery regarding any issues is irrelevant to the claims against Dr. Hamby.**

32.     On April 17, 2002, Dr. Shute saw plaintiff again.  Pl. Ex. V at 25.  Plaintiff reported that his scrotum still swelled, but that it responded somewhat to ice packs.  *Id*.  He also reported that he was out of ibuprofen.  *Id*.  Dr. Shute renewed the plaintiff's pass fo rice packs and prescribed more ibuprofen.  *Id*.

**RESPONSE: Immaterial, but undisputed.  Defendant admits that Dr. Shute saw the Plaintiff on April 17, 2002 and reported that his scrotum occasionally swelled up but responded to ice packs.  He also reported that he was out of ibuprofen.  There is no dispute**

**HEYL ROYSTER**
**VOELKER**
**&ALLEN**

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-P0600
TMP/ej

that Dr. Shute renewed the ice packs and the prescription for ibuprofen.  **Defendant does not dispute that Plaintiff was receiving medical care from Dr. Shute, but denies that Dr. Hamby interfered with or affected Dr. Shute's visits with Mr. Hayes in any way.**

33.    After receiving plaintiff's April 16 letter, Mr. Montgomery asked Mary Lindley, an administrative assistant, to investigate plaintiff's complaints.  DOC Stat. at 7 ¶ 37 and Ex D.

**RESPONSE: Immaterial.  Communications between Mr. Hayes and IDOC employees are irrelevant to the claims against Dr. Hamby.**

34.    On May 9, 2002, Ms. Lindley wrote a memorandum to the Medical Unit to inquire about the complaints.  In the memorandum, Ms. Lindley stated that "[j]ust a brief history/comments will suffice."  *Id*.

**RESPONSE:  Immaterial.  Communications between Mr. Hayes and IDOC employees are irrelevant to the claims against Dr. Hamby.**

35.    On and around May 17, 2002, Dr. Hamby, reviewed plaintiff's full medical record and prepared and delivered to the Administrative Assistant's Office a three page Summary of plaintiff's medical condition.  DOC Stat. at 7 ¶ 38 and Ex. E; Hamby Dep. at 44-45 (referring to Exhibit Z, which is the same document at Exhibit E to the DOC Statement).

**RESPONSE: Immaterial.  In response to complaints made by Mr. Hayes to IDOC administrative staff, Dr. Hamby reviewed the Plaintiff's medical record and prepared a summary at their request.  This summary did not form the basis of any care and treatment and was not used in the course of caring for the patient.**

36.    The letter contained numerous misstatements and inaccuracies – such as stating that plaintiff initially reported pain in his <u>right</u> testicle in September 2001, but then subsequently

HEYLROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-P0600
TMP/ej

complained of pain in his <u>left</u> testicle, when in fact plaintiff has reported <u>left</u> testicular pain in September 2001 as well.  DOC Stat. Ex. E; *see also* Pl. Stat. ¶ 6, *supra*.

**RESPONSE: Immaterial.  The letter written by Dr. Hamby to the administrative staff regarding a grievance filed by the Plaintiff may have contained some misstatements concerning whether or not the patient was complaining of his right or left testicle, but this in no way affected the patient's care and treatment as provided by Dr. Hamby.**

37.    The letter also was internally inconsistent.  It recited plaintiff's numerous and ongoing complaints of testicular pain but then summarized by stating that plaintiff experienced only "occasional tenderness" in his groin area.  DOC Stat. Ex. E.

**RESPONSE: Immaterial.  The letter provided to administrative staff was not a part of the patient's care and treatment reports, but was made in the course of responding to a grievance rather than forming the basis of the patient's care and treatment.**

38.    Finally, the letter did not address plaintiff's cramping and retracting testicle (except to note at one point that the left testicle was higher than the right), and did not explain why plaintiff's extreme pain from this condition was not being treated.  *Id.*

**RESPONSE: Immaterial.  The letter provided to administrative staff was not a part of the patient's care and treatment reports, but was made in the course of responding to a grievance rather than forming the basis of the patient's care and treatment.  As indicated, the letter was a summary of care provided by all medical staff to a non-medical provider.  There is no evidence that this letter was used as a basis for providing care.**

39.    On May 24, 2002, Assistant Warden Bass wrote to plaintiff to respond to the April 16 Montgomery Letter.  Pl. Ex. IV (Hayes Decl.) At 3 ¶ 15 and Ex. DD.  Ms. Bass stated in the letter

HEYLROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-P0600
TMP/ej

that she had contacted the Health Care Unit and Health Care Director, and that they had indicated

that plaintiff had been seen and was being monitored. *Id*. The letter did not address plaintiff's pain.

*Id*.

**RESPONSE: Immaterial.  Communications between the Plaintiff and someone other than Dr. Hamby regarding Plaintiff's complaints are irrelevant to Plaintiff's claims against Dr. Hamby.  There is no evidence that such communications in any way affected the course of care provided by Dr. Hamby at any time.**

40.    On or around May 2002, plaintiff learned that Dr. Shute had left his employment at HCC, and that he no longer would have access to the ice packs.  Hayes Dep. 33-35, 91.

**RESPONSE: Immaterial.  Plaintiff has no evidence to indicate that Dr. Hamby saw the patient and refused to provide the Plaintiff with necessary medical care in the form of ice packs.  There is no evidence whatsoever to indicate that Dr. Hamby provided the Plaintiff with ice packs, refused to provide the Plaintiff with ice packs, denied the Plaintiff ice packs, or interfered with any other physicians' prescriptions of ice packs.  This statement has nothing to do with the interactions between Mr. Hayes and Dr. Hamby.**

41.    From this point until plaintiff's departure from HCC, he never again received permission to obtain ice packs for his pain.  *Id.* at 33-35.

**RESPONSE: Immaterial.  Plaintiff has provided no evidence whatsoever to indicate that the Plaintiff was in medical need of ice packs for a condition presented to Dr. Hamby.**

42.    From late May through July 2002, plaintiff made four sick call requests to see a doctor, each of which was rejected by the Medical Unit.  Hayes Dep. at 35, 81-82; Pl. Ex. IV (Hayes Decl.) at 2 ¶¶ 14-15.

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-P0600
TMP/ej

**RESPONSE: Immaterial.  If Mr. Hayes completed sick call requests, there is no indication that these sick call request forms were actually presented to the healthcare unit as they have no stamp on them.  Moreover, there is no evidence to suggest that Dr. Hamby ever was presented with these sick call request forms during the time of Plaintiff's incarceration.  Accordingly, they have no bearing upon whether or not Dr. Hamby's care and treatment provided to Mr. Hayes constituted deliberate indifference.**

43.    Plaintiff kept copies of three of these requests, and noted and dated in his own handwriting "No Response to this Request" at the bottom of each request when he received no response to the request.  Hayes Dep. at 96; Pl. Ex. IV (Hayes Decl.) at 2 ¶¶ 10, 16 and Ex. BB.

**RESPONSE: Immaterial.  If Mr. Hayes completed sick call requests, there is no indication that these sick call request forms were actually presented to the healthcare unit as they have no stamp on them.  Moreover, there is no evidence to suggest that Dr. Hamby ever was presented with these sick call request forms during the time of Plaintiff's incarceration.  Even assuming that these requests were received by a nurse, there is no evidence to suggest that such complaints merited a referral to a physician or that if a referral would have been made to a doctor, the doctor would have been Dr. Hamby.  Accordingly, they have no bearing upon whether or not Dr. Hamby's care and treatment provided to Mr. Hayes constituted deliberate indifference.**

44.    Upon seeing the three sick call request during his deposition, Dr. Hamby insisted the handwritten statements "No Response to this Request" on each of the requests were made by his nurses, and that they demonstrated that plaintiff was refusing to seek treatment for his pain.  Hamby Dep. at 97-99 and Ex. BB.

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

16

05415-P0600
TMP/ej

**RESPONSE: Immaterial. If Mr. Hayes completed sick call requests, there is no indication that these sick call request forms were actually presented to the healthcare unit as they have no stamp on them. Moreover, there is no evidence to suggest that Dr. Hamby ever was presented with these sick call request forms during the time of Plaintiff's incarceration. Accordingly, they have no bearing upon whether or not Dr. Hamby's care and treatment provided to Mr. Hayes constituted deliberate indifference.**

45.    Dr. Hamby's testimony in this regarding was demonstrably untrue, for several reasons: (a) as indicated by the Bates numbering at the bottom of the requests, the sick call requests were produced by plaintiff to defendants (*see* Pl. Ex. IV (Hayes Decl.) At 2 ¶ 17), and plaintiff would not have had access to the requests unless he had retained copies of them and written on them; (b) the notes clearly are in plaintiff's handwriting; and (c) since the requests, on their faces, went from plaintiff to the Medical Unit, it would have made no sense for a <u>nurse</u> to write that there was no "response" to the "request". *See* Hamby Dep. at 97-99 and Ex. BB.

**RESPONSE: Immaterial. If Mr. Hayes completed sick call requests, there is no indication that these sick call request forms were actually presented to the healthcare unit as they have no stamp on them. Moreover, there is no evidence to suggest that Dr. Hamby ever was presented with these sick call request forms during the time of Plaintiff's incarceration. Accordingly, they have no bearing upon whether or not Dr. Hamby's care and treatment provided to Mr. Hayes constituted deliberate indifference. Whether or not the handwriting at the bottom of the note is the nurse's handwriting or Mr. Hamby's is irrelevant. There is no evidence that Dr. Hamby was aware of these sick call requests. Dr. Hamby believed the**

HEYLROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

17

05415-P0600
TMP/ej

writing on the forms was that of a nurse.  If that is not the case, it has no bearing on the relevant issues in this case.

46.     On June 10, 2002, plaintiff wrote to Assistant Warden Bass to respond to her letter of May 24, 2002.  Pl. Ex. IV (Hayes Decl.) At 3 ¶ 18 and Ex. CC; *see also* Hamby Dep. at 99-100 and Ex. CC.

**RESPONSE: Immaterial.  There is no evidence that Dr. Hamby ever saw the letter, nor that it impacted his care and treatment.**

47.     In the June 10 letter, plaintiff repeated his explanation of the pain he was suffering and also complained that the medical Unit now was refusing to give him his "Pain Medication". Pl. Ex. IV (Hayes Decl.) At 3 ¶ 18 and Ex. CC.

**RESPONSE: Immaterial.  There is no evidence that Dr. Hamby ever saw the letter, nor that it impacted his care and treatment.**

48.     On June 17, 2002, Assistant Warden Bass wrote to plaintiff in response to his June 10 letter.  DOC Stat. at 6 ¶ 24 and Ex. B.

**RESPONSE: Immaterial.  There is no evidence that Dr. Hamby ever saw the letter, nor that it impacted his care and treatment.**

49.     In her June 17 letter, Ms. Bass acknowledged that plaintiff suffered from swelling and pain in his scrotum, and stated that ice packs and ibuprofen helped the pain, but made no reference to plaintiff's complaints that he no longer was receiving even this minimal treatment.  *Id*.

**RESPONSE: Immaterial.  Plaintiff's complaints to an IDOC employee are irrelevant to complaints specifically made to Dr. Hamby.**

HEYLROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

18

05415-P0600
TMP/ej

50.    On or about June 20, 2002, plaintiff filed a formal grievance.  DOC Stat. at 7 ¶ 39 ant Ex. F.

**RESPONSE: Immaterial.  Plaintiff has failed to indicate how the writing of his grievance shows deliberate indifference on the part of Dr. Hamby.**

51.    In this grievance, plaintiff pleaded for pain medication and the ice packs, and explained how, over the prior year, he had written to numerous people, and "Yelled Screamed, and Cryed" about his pain.  *Id*.  He ended the grievance with the statement, "Please Help Me."  *Id*. at 2.

**RESPONSE: Immaterial.  Statements made by the Plaintiff not only are irrelevant to the claims made against Dr. Hamby, but constitute hearsay as they are out of court statements offered into evidence for purposes of proving the truth of the matter asserted.  Moreover, these statements are also inadmissible as they are prior consistent statements which also are not relevant.**

52.    By Memorandum dated July 1, 2002, Warden Pierson wrote directly to plaintiff and told plaintiff that his "concerns" had been "appropriately addressed" by Ms. Bass and the Medical Unit.  DOC Stat. at 5-6 ¶ 27 and Ex. A.

**RESPONSE: Immaterial.  Communications between IDOC employees and Mr. Hayes are irrelevant to the claims against Dr. Hamby.**

53.    Finally, on July 13, 2006, plaintiff managed to get in to see a nurse, who apparently without Dr. Hamby's knowledge, prescribed ibuprofen for him.  Pl. Ex. V at 28; Hamby Dep. Ex. AA; *see also* Hamby Dep. at 94-96 Pl. Ex. V at 29 (indicating that he did not believe that plaintiff was seen during July 2002).

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-P0600
TMP/ej

**RESPONSE: Irrelevant. Whether or not Mr. Hayes received ibuprofen from a nurse is irrelevant to the claims made against Dr. Hamby.**

54.    On or about July 18, 2002, plaintiff's June 20 grievance was denied. Defendants' Stat. at 7 ¶ 39 and Ex. F at 3.

**RESPONSE: Immaterial. The outcome of Mr. Hayes' grievance is irrelevant to the claims made against Dr. Hamby.**

55.    On or about August 15, 2002, plaintiff was released from HCC and placed on parole. Pl. Ex. I at 2014-2015.

**RESPONSE: Material and undisputed.**

56.    Plaintiff proceeded directly to the Veterans' Administration Hospital in Danville, Illinois, for treatment. *Id.* at 2014 (top).

**RESPONSE: Material and undisputed.**

57.    A week prior to plaintiff's release, on or about August 8, 2006, Susan Franklin, a placement specialist with the Department of Corrections, had sent a fax to the Chief Social Worker at the Danville Hospital. *Id.* at 2014-2015.

**RESPONSE: Immaterial. There is no evidence to indicate that the facts sent to the Chief SWS (social worker) had any affect whatsoever on care and treatment provided to this individual by anyone.**

58.    In her fax to and subsequent conversation with the Hospital, Ms. Franklin informed the Hospital staff that, among other things, plaintiff "needs to see the physician almost daily" and that his "primary problems are psychiatric". *Id.*

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-P0600
TMP/ej

**RESPONSE: Immaterial. The contents of this document constitute hearsay. Moreover, there is no evidence to indicate that the document was reviewed by any of the medical physicians at the Danville Veterans Administration Hospital, and particularly, Dr. Amin. There is also no evidence to indicate that this letter in any way affected the care and treatment provided to the Plaintiff or recommended to be provided to the Plaintiff.**

59.    Upon arriving at Danville, plaintiff reported his scrotal pain as well as his post-traumatic stress disorder from Vietnam.  *Id*. at 2006; Hayes Dep. at 37-38.

**RESPONSE: Material and undisputed.**

60.    As described in Hamby Statement ¶¶ 24-47, and in plaintiff's responses to various of those paragraphs (*see supra* at Pl. Resp. Hamby Stat. ¶¶ 30, 35-46), plaintiff was seen by Dr. Amin, a Danville urologist, for roughly 15 minutes on August 22, 2002.  *See also* Amin Dep. at 30.

**RESPONSE: Material and undisputed.**

61.    As also discussed above, based on his examination of plaintiff <u>and</u> on the Danville Hospital medical records (which included the record of Ms. Franklin's communications to the hospital regarding plaintiff's psychiatric problems), Dr. Amin determined that plaintiff might be seeking drugs, and that he, Dr. Amin, "was not going to go for it" at that time.  Pl. Resp. Hamby Stat. ¶30.

**RESPONSE: Material, but disputed.  Defendant disputes Paragraph 61 to the extent that Plaintiff has no evidence to support the claim that Dr. Amin relied upon a letter to the Veterans Administration Hospital, or that Dr. Amin's assessment was based upon outside information.  To the contrary, Dr. Amin testified in his deposition that he had his own basis for his opinions, which included his experience in being a physician.  (See Dr. Amin's deposition.)**

HEYLROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-P0600
TMP/ej

62.     On or about August 25, 2002, plaintiff was discharged from the Danville VA.  Pl. Ex.
I at 1960.

**RESPONSE: Material and undisputed.**

63.     Despite Dr. Amin's initial concerns that plaintiff might be seeking drugs improperly,
the Danville Hospital discharged plaintiff with prescriptions for, among other things, Ibuprofen and
"Darvocet [a narcotic] one tablet per mouth twice a day as needed <u>for extreme pain.</u> *Id*. (emphasis
added).

**RESPONSE: Immaterial.  Dr. Amin did not provide the Plaintiff with a prescription
for any medications.  There is no evidence to indicate that Dr. Amin was aware that the patient
had been discharged with prescriptions for pain by any other physician, nor that he had a duty
to interfere with care and treatment provided by other physicians.  Both Dr. Amin and Dr.
Hamby have the right to disagree with recommendations made by other physicians.  Such
disagreements are proof of nothing other than the fact that people in the same profession may
disagree as to how to proceed on a particular course of action.**

64.     On September 12, 2002, plaintiff was seen at the VA Hospital in Lexington, KY by
a triage nurse to whom he reported his testicular pain and described how his testicle was "drawing
up like a muscle cramp".  Pl. Ex. II (Bingham Dep.) At 23 and Ex. B.

**RESPONSE: Immaterial.  Any care and treatment provided to the Plaintiff more than
a year after his release from the correctional department and almost two (2) years after the
patient was seen by Dr. Hamby has no bearing on this cause of action.**

65.     That same day, plaintiff was evaluated by a nurse practitioner.  Pl. Ex. II (Bigham
Dep.) At 24-25 and Ex. C.  The nurse practitioner noted that plaintiff had a history of left testicular

HEYLROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

22

05415-P0600
TMP/ej

retraction with pain, and that the left testicle was very tender. *Id*. In response to what she observed, the nurse scheduled a testicular ultrasound and urology consult. *Id*.

**RESPONSE: Immaterial. Any care and treatment provided to the Plaintiff more than a year after his release from the correctional department and almost two (2) years after the patient was seen by Dr. Hamby has no bearing on this cause of action.**

66.    On September 30, 2002, plaintiff was first seen by Dr. Alacia Bigham, his current primary care physician. Pl. Ex. II (Bigham Dep.) at 21 and Ex. A. Dr. Bigham noted that an ultrasound had been scheduled, and also prescribed lortab (a narcotic) for plaintiff's testicular pain. Pl. Ex. II (Bigham Dep.) at 36-37, 59 and Ex. A.

**RESPONSE: Immaterial. Care and treatment provided to the Plaintiff more than a year after his release from the correctional department and almost a year after the patient was seen by Dr. Hamby has no bearing on this cause of action. Differences of opinion regarding treatment of patients does not constitute deliberate indifference.**

67.    On October 10, 2002, patient was seen by Dr. William Terence Conner, a urologist at the VA. Pl. Ex. II (Bigham Dep.) at 46-47 and Ex. D.

**RESPONSE: Immaterial. Care and treatment provided to the Plaintiff more than a year after his release from the correctional department and almost a year after the patient was seen by Dr. Hamby has no bearing on this cause of action. Differences of opinion regarding treatment of patients does not constitute deliberate indifference.**

68.    Dr. O'Connor's impression, as indicated in his progress note of October 12, 2002, was "L. epidymimal pain and crematic muscle spasm with chronic pain and peronies disease." *Id*. Peronies disease is an abnormal curvature of the penis. Pl. Ex. II (Bigham Dep.) at 51.

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

23

05415-P0600
TMP/ej

**RESPONSE:   Conditions presented to other physicians are irrelevant as to the claims made against Dr. Hamby.  Additionally, there is no evidence that the Plaintiff's condition as presented on October 12, 2002 was the same as presented to Dr. Hamby in October of 2001. In addition, Dr. Amin, an outside urologist, evaluated this patient in August of 2002 and found no such objective findings.  Dr. Amin found no serious medical needs at that time.  Evidence that other physicians made findings similar to that of Dr. Hamby supports the defense that Dr. Hamby's assessment was reasonable and within the standard of care and therefore did not constitute deliberate indifference.**

69.     The cremastreric muscle is the muscle that holds the testicles up to the body to protect them.  Pl. Ex. II (Bigham Dep.) at 54-55.  The cremastreric muscle is normally relaxed, but contracts in response to injury or trauma.  *Id*.  A muscle spasm of the cremastreric muscle causes the muscle to contract when it should be relaxed.  *Id*.  A cremastreric muscle spasm causes pain.  *Id*.

**RESPONSE: Immaterial.  Neither Dr. Hamby nor Dr. Shute nor anybody else at the Hill Correctional Center diagnosed the patient as having a condition involving the cremasteric muscles in August of 20092.  In addition, Dr. Amin did not document a problem with the patient's cremasteric muscles.  This condition was not diagnosed until a year after Plaintiff's discharge from the Department of Corrections.**

70.     A urologist is the appropriate type of doctor to diagnose a cremastreric muscle spasm. Pl. Ex. II (Bigham Dep.) at 55.

**RESPONSE: Immaterial.  Neither Dr. Hamby nor Dr. Shute nor anybody else at the Hill Correctional Center diagnosed the patient as having a condition involving the cremasteric muscles in August of 20092.  In addition, Dr. Amin did not document a problem with the**

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

24

05415-P0600
TMP/ej

patient's cremasteric muscles.  This condition was not diagnosed until a year after Plaintiff's discharge from the Department of Corrections.

71.    Dr. Conner treated the patient with an verapamil injection for the curvature of the penis, ordered a CT scan of the pelvis, and referred the plaintiff for a pain management consult. Pl. Ex. II (Bigham Dep.) at 46-47 and Ex. D.

**RESPONSE: Immaterial.   The care and treatment provided to the Plaintiff for curvature of his penis has nothing to do with the complaints made to Dr. Hamby.  In addition, this condition is not a serious medical need.**

72.    On or about January 27, 2003, the plaintiff was seen again by Dr. Connor and another resident physician in the urology department, Dr. Chad Lagrange.  Pl. Ex. II (Bigham Dep.) at 67-69 and Ex. G.   Dr. Connor indicated that "the left cremasteric spasm should be managed with medications and protection from trauma."  *Id.*

**RESPONSE: Immaterial.   Care and treatment provided to Mr. Hayes in 2003 is immaterial to the findings made by Mr. Hayes was an inmate at the Hill Correctional Center.**

73.    On or about March 24, 2003, the plaintiff was seen by Dr. Joseph Atallah, a board certified pain management specialist at the Kentucky VA Hospital.  Pl. Ex. III (Atallah Dep.) at 12-13 and Ex. L.

**RESPONSE: Immaterial.  Care and treatment provided more than a year after Plaintiff was discharged from the Department of Corrections is not relevant to Plaintiff's presentation in October of 2001.**

74.    Dr. Atallah prescribed trigger point injections into the plaintiff's cremastreric muscle because plaintiff suffered from a very spastic cremastreric muscle.  Pl. Ex. III (Atallah Dep.) at 13.

HEYLROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

25

05415-P0600
TMP/ej

**RESPONSE: Immaterial.  A condition present in August of 2003 is irrelevant to presentations made in October of 2001.**

75.    The injections, which plaintiff continues to receive, provide the plaintiff with temporary relief.  Pl. Ex. III (Atallah Dep.) at 24.

**RESPONSE: Immaterial.  Current care for a condition which was not present or diagnosed back in 2001 is immaterial and irrelevant to the claims made against Dr. Hamby.**

76.    In addition to the trigger point injections, plaintiff is taking Morphine Sulfate SR (slow release morphine) and Hydrocodone (a narcotic) to manage his severe testicular pain.  Pl. Ex. III (Atallah Dep.) at 30-31; Pl. Ex. II (Bigham Dep.) at 36.

**RESPONSE:  Immaterial.  Current care for a condition which was not present or diagnosed back in 2001 is immaterial and irrelevant to the claims made against Dr. Hamby.**

77.    Plaintiff remains under Dr. Atallah's care today.  *Id*.

**RESPONSE:  Immaterial.  Current care for a condition which was not present or diagnosed back in 2001 is immaterial and irrelevant to the claims made against Dr. Hamby.**

## II.  ARGUMENT

Plaintiff argues that Dr. Hamby's Motion for Summary Judgment fails to address prisoners suffering from extreme pain.  Defendant's Motion for Summary Judgment does not address this condition because the condition was not presented to Dr. Hamby.  At no time has Dr. Hamby indicated that Floyd Hayes presented to him with complaints of extreme pain.  Moreover, for those complaints of pain that were made, Dr. Hamby's examination found no medical condition which would cause the patient to be in extreme pain.

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-P0600
TMP/ej

Plaintiff claims that Defendant Hamby makes no effort to explain why he refused to prescribe pain relievers. Dr. Hamby did not see Mr. Hayes after October 15, 2001. There is no evidence to indicate that Dr. Hamby interfered with the care and treatment provided by other physicians. Dr. Hamby testified that he would not prescribe medications for someone with no documentable medical condition requiring such medication. Both Dr. Hamby and Dr. Amin testified that they would not prescribe medication for complaints of pain when there was no documentable medical condition causing the alleged pain. Plaintiff suggests that all complaints of pain should be treated with narcotic or some form of pain management. While some physicians may agree, others would not.

Plaintiff appears to be arguing that he made complaints to Dr. Hamby that were not documented in the medical records. Plaintiff has no evidence to support his claim that Dr. Hamby thought the Plaintiff was in severe pain and that he failed to treat it. Dr. Hamby did provide over-the-counter pain medication for the complaints made to him in October of 2001. Thereafter, Mr. Hayes was seen by other physicians and not Dr. Hamby. Plaintiff does not complain directly of the care provided by Dr. Shute and others. However, to the extent suggestions for certain procedures were made but not carried out, Plaintiff asserts that Dr. Hamby must have interfered without any admissible support for such allegations.

It appears that Plaintiff is claiming that Dr. Hamby should have done something different with respect to complaints made by Floyd Hayes to other physicians. There is no evidence to indicate that Dr. Hamby had a duty to review care and treatment provided by other physicians to inmates at the Hill Correctional Center. Dr. Hamby testified that he was aware of the complaints made to him in October 2001 and that he treated the Plaintiff for the conditions documented by him. While it is true that Dr. Hamby reviewed the Plaintiff's chart regarding complaints made to other physicians, there

**HEYL ROYSTER**
**VOELKER**
**&ALLEN**

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

27

05415-P0600
TMP/ej

is no evidence to indicate that Dr. Hamby disagreed with the care and treatment provided to Mr. Hayes by other physicians. If Plaintiff is claiming that Dr. Hamby should have altered the care, there is no support for such a duty to do so.

Plaintiff's cause of action against Dr. Hamby is one for deliberate indifference to a serious medical need. First, Plaintiff has failed to establish that Dr. Hamby had subjective knowledge of a serious medical need or that a serious medical need existed at any time Dr. Hamby examined Plaintiff. Dr. Hamby's testimony in his deposition is referred to by both Defendant and the Plaintiff with respect to that issue. Dr. Hamby found no medical condition which would or should have caused the Plaintiff any pain. Dr. Hamby did not and would not provide the patient with medication without first documenting a medical reason to do so. The reference to Dr. Amin's examination of the Plaintiff at the Danville Hospital provides support for Defendant's claim that Dr. Hamby's care was not only within the standard of care and appropriate, but did not constitute deliberate indifference as other physicians provided the same or similar care to Mr. Hayes based upon his presentation to them. Plaintiff's suggestion that Dr. Amin's determination not to prescribe pain medication was tainted by IDOC's warning is totally unfounded as Dr. Amin made no suggestion in his testimony that he had even read such a letter.

Moreover, the Plaintiff is attempting to assert that Dr. Hamby was deliberately indifferent to the Plaintiff's serious medical needs by failing to provide him with the narcotics and pain medication treatments that he is currently receiving. Once again, evidence of disagreements between and among physicians is not evidence of deliberate indifference. In addition, there is no documentation that anyone diagnosed Mr. Hayes as having a problem with his cremasteric muscles prior to the reference made in January of 2003. Plaintiff appears to be asserting that a prescription for narcotic medications

HEYL ROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

28

05415-P0600
TMP/ej

in 2003 necessitates that Mr. Hayes should have been given those same medications on various other occasions while an inmate at the Hill Correctional Center. Again, differences of opinion between and among physicians does not constitute deliberate indifference.

Plaintiff's argument that Dr. Hamby fails to even claim that he did not believe the Plaintiff's complaints of pain is disingenuous. Dr. Hamby specifically noted in his records the complaints made by the Plaintiff, which did not include complaints of severe pain, but suggested discomfort at the worst. There are no genuine issues of material fact asserted in these motions.

WHEREFORE, Defendant, WILLIAM M. HAMBY, M.D., prays that this Court will enter summary judgment in his favor and against the Plaintiff.

Respectfully submitted,

WILLIAM M. HAMBY, M.D., Defendant,

HEYL, ROYSTER, VOELKER & ALLEN,
Attorneys for Defendant,

BY:    /s/Theresa M. Powell
Theresa M. Powell, #6230402
HEYL, ROYSTER, VOELKER & ALLEN
Suite 575, National City Center
P. O. Box 1687
Springfield, IL  62705
Phone: (217) 522-8822
Fax:    (217) 523-3902
E-mail:tpowell@hrva.com

**HEYLROYSTER**
**VOELKER**
**&ALLEN**

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822

05415-P0600
TMP/ej

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2006, I electronically filed **Reply to Plaintiff's Response to Motion for Summary Judgment** with the Clerk of Court using the CM/ECF system which will send notification of such filings(s) to the following:

Kelly R. Choate
kchoate@atg.state.il.us

Jonathan A. Backman
jbackman@backlawoffice.com

Respectfully submitted,
s/Theresa M. Powell
HEYL, ROYSTER, VOELKER & ALLEN
Suite 575, National City Center
P.O. Box 1687
Springfield, IL 62705
Phone: (217) 522-8822
Fax:    (217) 523-3902
E-mail:tpowell@hrva.com

HEYLROYSTER
VOELKER
&ALLEN

Suite 575
National City Center
1 N. Old State Capitol Plaza
P.O. Box 1687
Springfield, IL 62705-1687
Fax (217) 523-3902
(217) 522-8822